202 Cal.App.3d 108 (1988)
247 Cal. Rptr. 897
In re the Marriage of NANCY M. and KIRK H. McLOREN.
NANCY M. McLOREN, Respondent,
v.
KIRK H. McLOREN, Appellant.
Docket No. B025870.
Court of Appeals of California, Second District, Division Three.
June 15, 1988.
*110 COUNSEL
Anne M. Beiner for Appellant.
Kennedy, Hughes & Safran and Neal R. Safran for Respondent.
OPINION
ARABIAN, J. 

INTRODUCTION
In this matter Kirk H. McLoren (the father) appeals a modification order by which Nancy M. McLoren (the mother) was granted joint legal custody of their children, Heather and Michael. As we shall explain, the parent who requests a change in custody, whether legal or physical, must establish that the modification is in the best interests of the child based upon a change in circumstances. In the present case, we find an abuse of the trial court's discretion in modifying legal custody since the mother failed to produce any evidence of the requisite change in circumstances. Accordingly, we reverse.

FACTUAL AND PROCEDURAL HISTORY
Nancy and Kirk McLoren were married October 17, 1976, and dissolution of their marriage was entered October 16, 1979. The marriage produced two children, Heather, born August 12, 1977, and Michael, born December 6, 1979.
The record reveals a relationship perhaps stormier after the dissolution than before. The mother was originally awarded physical custody of both children; and the father initially had little contact partly because of her family's hostility toward him. This hostility culminated on February 21, 1981, when the children's maternal grandmother shot and permanently injured the father with a shotgun. After recovery, the father's visitation became more regular, in part assisted by psychotherapeutic intervention for the parents and children.
In December 1981, the mother reported to authorities that the father had sexually and physically abused both children; visitation was discontinued until the father was cleared of all charges due to the lack of any evidence supporting the allegations.
In early 1983, the father was awarded physical custody of the children, which he continued to retain except for several months in 1984 when he was *111 accused of soliciting the mother's murder. The father was prosecuted, ultimately acquitted and the children have been residing with him and his new wife since that time. Until the present modification order, the father also had sole legal custody of the children.
On August 8, 1985, the mother filed an order to show cause seeking joint legal custody. The father opposed the order to show cause on the ground that there had been no change in circumstances since the previous custody order.
The superior court record contained numerous psychological evaluation reports on both parents and the children from as early as April 1982. This documentation detailed the emotional difficulties suffered by the children as a result of the parents' inability to cooperate in decisionmaking affecting their welfare. However, the later reports indicated some progress and improvement in Heather and Michael from the time the father obtained sole physical and legal custody.
The trial court held a hearing on October 14, 1986, and heard testimony from both parties and from Dale Hughes, a licensed clinical social worker who had been involved in the children's therapy for over a year. The court also considered an evaluation report submitted by Stan J. Katz, Ph.D., a clinical and forensic psychologist who had interviewed each parent and the children. Both therapists concluded that due to the parents' present inability to cooperate in decisionmaking on behalf of the children as well as the history of violence between them, joint legal custody was unworkable at the time. However, the court attempted to accommodate the concerns of each parent's involvement in decisions affecting the children and awarded joint legal custody with respect to medical, educational, and psychological matters.

ISSUE PRESENTED
The sole issue is whether the trial court abused its discretion in modifying the prior custody award and granting the mother joint legal custody of the children.
(1a) In resolving this issue, we conclude that a parent seeking modification of legal custody bears the same burden of proof as a parent seeking modification of physical custody: He or she must demonstrate a change in circumstances such that the modification is in the best interests of the child.

DISCUSSION
(2a) "`An application for a modification of an award of custody is addressed to the sound legal discretion of the trial court, and its discretion *112 will not be disturbed on appeal unless the record presents a clear case of an abuse of that discretion.' [Citations.]" (Lawrence v. Lawrence (1958) 165 Cal. App.2d 789, 792 [332 P.2d 305].)
(1b) "It is settled that to justify ordering a change in custody there must generally be a persuasive showing of changed circumstances affecting the child. [Citation.] And that change must be substantial: a child will not be removed from the prior custody of one parent and given to the other `unless the material facts and circumstances occurring subsequently are of the kind to render it essential or expedient for the welfare of the child that there be a change.' [Citation.] The reasons for the rule are clear: `It is well established that the courts are reluctant to order a change of custody and will not do so except for imperative reasons; that it is desirable that there be an end of litigation and undesirable to change the child's established mode of living.' [Citations; footnote omitted.]" (In re Marriage of Carney (1979) 24 Cal.3d 725, 730-731 [157 Cal. Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028].)
(3) Appellate courts most commonly invoke the foregoing concerns when reviewing a change in physical custody. However, neither decisional authority nor the statutory scheme precludes an equivalent inquiry for a change in legal custody. On the contrary, Civil Code section 4600.5, subdivision (i), provides that "[a]ny order for joint custody may be modified or terminated upon the petition of one or both parents or on the court's own motion if it is shown that the best interests of the child require modification or termination of the order"; and subdivision (d)(1) expressly defines "joint custody" as "joint physical custody and joint legal custody [italics added]."[1] *113 While an alteration of legal custody may not necessarily be as disruptive as an alteration of physical custody, nevertheless, any change in parental involvement will perforce have an impact upon the maintenance of "a stable physical and emotional ambient...." (Cochran v. Cochran (1966) 240 Cal. App.2d 418, 421 [49 Cal. Rptr. 670].) Thus, in exercising its discretion, the trial court must duly evaluate all the important policy considerations at issue in any change of custody and make its ultimate ruling based upon a determination of the best interests of the child. (See Civ. Code, §§ 4600, subd. (b), 4600.5, subd. (i), 4608; see also Burchard v. Garay (1986) 42 Cal.3d 531, 535 [229 Cal. Rptr. 800, 724 P.2d 486, 62 A.L.R.4th 237].)
(4) The "best interests of the child" include his or her "health, safety, and welfare" (Civ. Code, § 4608, subd. (a)) and "[t]he nature and amount of contact with both parents." (Civ. Code, § 4608, subd. (c).) More specifically, the court should give full regard to "the maintenance of a stable home life [citations], and the disturbing effect which might result from a change of the child's established mode of living [citations]." (Lawrence v. Lawrence, supra, 165 Cal. App.2d at pp. 792-793; In re Marriage of Stoker (1977) 65 Cal. App.3d 878, 881 [135 Cal. Rptr. 616]; see also Guardianship of Claralyn S. (1983) 148 Cal. App.3d 81, 85-86 [195 Cal. Rptr. 646]; In re Marriage of Mehlmauer (1976) 60 Cal. App.3d 104, 109 [131 Cal. Rptr. 325].) While these concerns apply most obviously when the court is contemplating a change in physical custody, they apply with equal force to a contemplated change in legal custody, especially for a child with a delicately and tenuously balanced psychological state.
(2b) The trial court's exercise of discretion also becomes more circumscribed when it effects a change in the ongoing relationship among the parents and children than when it makes an initial custody decision. Thus, "appellate courts have been less reluctant to find an abuse of discretion *114 when custody is changed than when it is originally awarded, and reversals of such orders have not been uncommon. [Citations.]" (In re Marriage of Carney, supra, 24 Cal.3d at p. 731.)
(1c) "Finally, the burden of showing a sufficient change in circumstances is on the party seeking the change of custody. [Citations.]" (Ibid.) (5) Thus, as petitioner in the instant case, the mother had the obligation of producing evidence and, based on that evidence, of persuading the court not only that circumstances now warranted granting her legal custody but also that the modification was in the children's best interests. (In re Marriage of Mehlmauer, supra, 60 Cal. App.3d at pp. 108-109.)
We do not find on the record before us that the mother met her burden in the foregoing. Neither the evidence provided by the expert therapists nor the testimony of the parties suggested any change in the circumstances that resulted in the previous award of sole legal custody to the father. The court purported to find an "apparent, very substantial improvement of the petitioner [mother] and of the children...." Presumably, this refers to their psychological state. But even if true, the finding does not amplify upon exactly what the improvement consisted of, whether the improvement of the children related to a change in circumstances effected by the mother or cooperatively between both parents, or how such a change occasioned an award of joint legal custody in the best interests of the children.
To the contrary, an examination of the entire record virtually forecloses any such conclusion. The troubled history of the parties reflects an ongoing inability to cooperate in their parenting responsibilities due to severe hostility toward each other, at times erupting into physical violence, and to a virtual absence of any communication between them. As all too often happens in such distressing situations, "[t]he parents' conflicts have resulted in extreme suffering for the children" and continued to have a pervasive negative impact on them. For example, an earlier therapist noted, "It is Heather and Michael who are acting out and expressing pain and turmoil which they feel as a result of the severe distress the members of this family have been in for some time." And all the professionals observed the "intense loyalty conflict between the father and the mother" experienced by both children throughout the custody litigation.
The mother submitted no evidence showing a resolution of this emotional impasse. Although Dr. Katz reported that she "appears to have made some progress in containing her hostility and anxiety," he nevertheless concluded in no uncertain terms that joint legal custody could not be implemented "without tremendous problems." In his opinion, such an alteration "will only cause further chaos and potentially a dangerous situation for all involved." Dale Hughes also concluded that, given the psychological state of *115 the parents at that time, joint legal custody appeared "unworkable." And finally, the testimony of neither parent addressed their willingness to cooperate with each other in making medical, educational, or psychological decisions on behalf of their children. At best, the mother indicated her willingness to participate in some kind of therapy with each child.[2]
Additionally, the record does not indicate the court adequately assessed the mother's history of physical and psychological violence toward the father in evaluating whether they would currently be able to work together cooperatively and amicably enough to prevent a recurrence of their animosity. The order simply refers to the fact that the mother "seems to have made very significant steps in controlling (if not resolving) her worst problems" and has made "apparent, very substantial improvement" and notes that both parties have been manipulative throughout the custody litigation. Although the decision to modify the custody arrangement generally should be based upon the circumstances at the time of the requested modification, "prior conduct may, of course, be considered by the court in determining with which parent the best interest of the child will be found." (Sanchez v. Sanchez (1961) 55 Cal.2d 118, 124 [10 Cal. Rptr. 261, 358 P.2d 533].) In a case fraught with past violence, which has had a demonstrably adverse effect on the children, such a history merits substantial reflection.
More importantly, both the recommendations of the therapists and a fair reading of the children's psychological evaluations demonstrate a modification would decidedly not be in their best interests. The trial court itself acknowledged its own perception of the parties' "inability to reach agreements in the best interests of the children...." However, rather than ruling in conformance with this conclusion and the dictates of statutory and decisional law, the trial court attempted to accommodate the concerns of both parents to be involved in decisions affecting their children. In adopting this approach, the court clearly abused its discretion: "[T]he children involved in a custody proceeding should not be made the pawns of the personal desires, either on the part of the contestants or the court, no matter how sincere such desires may be." (Juri v. Juri (1943) 61 Cal. App.2d 815, 819 [143 P.2d 708].) While the preceding sentiment was expressed in the context of a modification of physical custody, we find under the facts of this case it applies with equal force to a modification of legal custody, given the psychological difficulties brought on by the parents that the children must continue to struggle with for many years to come.
Although we may sympathize with the court's compassionate view that ultimately the children's best interests would be served by their having a full *116 and involved relationship with each parent, the reality of their parents' conflicts unavoidably hampers the realization of that goal. Considered in the abstract, mutual assistance between the parents may well relieve some of the conflict and anxiety suffered by the children over the years; but the record contains no evidence the parties currently are ready, willing, or able to engage in such a cooperative effort. We also share the trial court's concern that the best interests of the children not be stymied because of either parent's refusal to cooperate with the other. However, since the father is not frustrating the mother's reasonable access to ongoing contact with the children, we find no basis for penalizing him by restricting the previous order of sole legal custody. (See Speelman v. Superior Court (1983) 152 Cal. App.3d 124, 131-133 [199 Cal. Rptr. 784]; see also Civ. Code, §§ 4600, subd. (b)(1), 4608, subd. (c).)
Although purportedly acting in the best interests of the children, the court below "ignored the requirement that a change in circumstances be demonstrated before a change of custody is ordered, contrary to the dictates of In re Marriage of Carney (1979) 24 Cal.3d 725, 730-731...." (Speelman v. Superior Court, supra, 152 Cal. App.3d at p. 126.) This rule applies equally whether the contemplated modification affects physical or legal custody. We further emphasize, particularly with respect to factual situations like the one before us, that the requisite change in circumstances must relate directly to the welfare of the children in light of the history of their parents' pathetic relationship and must clearly warrant an alteration of their delicately balanced psychological environment.[3]

DISPOSITION
The order of modification is reversed. Respondent is to bear costs on appeal.
Klein, P.J., and Croskey, J., concurred.
NOTES
[1] Civil Code section 4600.5 provides in part as follows: "(a) There shall be a presumption, affecting the burden of proof, that joint custody is in the best interests of a minor child subject to Section 4608 where the parents have agreed to an award of joint custody or so agree in open court at a hearing for the purpose of determining the custody of a minor child of the marriage.

"(b) Upon the application of either parent, joint custody may be awarded in the discretion of the court in other cases, subject to the provisions of Section 4608. For the purpose of assisting the court in making a determination whether an award of joint custody is appropriate under this subdivision, the court may direct that an investigation be conducted pursuant to Section 4602.
"(c) Whenever a request for joint custody is granted or denied, the court, upon the request of any party, shall state in its decision the reasons for granting or denying the request. A statement that joint physical custody is, or is not, in the best interests of the child shall not be sufficient to meet the requirements of this subdivision.
"(d) For the purposes of this part:
"(1) `Joint custody' means joint physical custody and joint legal custody.
".... .... .... .... .... . .
"(4) `Sole legal custody' means that one parent shall have the right and the responsibility to make the decisions relating to the health, education, and welfare of a child.
"(5) `Joint legal custody' means that both parents shall share the right and the responsibility to make the decisions relating to the health, education, and welfare of a child.
"(e) In making an order of joint legal custody, the court shall specify the circumstances under which the consent of both parents is required to be obtained in order to exercise legal control of the child and the consequences of the failure to obtain mutual consent. In all other circumstances, either parent acting alone may exercise legal control of the child. An order of joint legal custody shall not be construed to permit an action that is inconsistent with the physical custody order unless the action is expressly authorized by the court.
".... .... .... .... .... . .
"(i) Any order for joint custody may be modified or terminated upon the petition of one or both parents or on the court's own motion if it is shown that the best interests of the child require modification or termination of the order. The court shall state in its decision the reasons for modification or termination of the joint custody order if either parent opposes the modification or termination order.
"(j) Any order for the custody of a minor child of a marriage entered by a court in this state or any other state may, subject to the jurisdictional requirements set forth in Sections 5152 and 5163, be modified at any time to an order of joint custody in accordance with the provisions of this section.
".... .... .... .... .... . .
[2] Furthermore, the record inferentially substantiates that the children's mental health improved during the time the father had sole legal custody and was able to make decisions for them without engaging in potentially hostile exchanges with the mother.
[3] In light of our disposition, we need not determine whether the court's order regarding therapy violates the holding of In re Marriage of Matthews (1980) 101 Cal. App.3d 811, 817-818 [161 Cal. Rptr. 879].