Filed 12/12/14  In re D.R. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D.R. et al., Persons Coming Under the Juvenile Court Law. | B253104 |
| | (Los Angeles County Super. Ct. No. CK94784) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
|     Plaintiff and Respondent, | |
|     v. | |
| MARTIN R., | |
|     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Honorable Annabelle G. Cortez, Judge.  Affirmed.

Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

# INTRODUCTION

Martin R. (father) appeals from the juvenile court's order terminating jurisdiction over his daughter, D.R., and his twin sons, Daniel R. and David R. Father also appeals from the court's exit order granting sole legal and physical custody to the children's mother, Sylvia R. (mother), with monitored visits for father.

Welfare and Institutions Code[1] section 364 mandates the termination of dependency jurisdiction where the conditions that justified the initial assumption of jurisdiction no longer exist and those conditions are unlikely to return if supervision is withdrawn. In the instant case, the juvenile court assumed jurisdiction over the children after all three reported ongoing physical abuse and medical neglect by father. When the court terminated jurisdiction the evidence indicated the children had been safely maintained in mother's custody for over 15 months since their detention. We find no abuse of discretion.

As for the exit order, the evidence of the parents' inability to agree on basic issues concerning visitation, coupled with father's disagreement with mother over when to obtain medical treatment for the children, supports the court's order granting mother sole legal custody. And, because the order specifies the minimum frequency and duration for father's monitored visits, father has not established an abuse of discretion with respect to the visitation aspect of the order. We affirm.

---

[1] Subsequent statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

## FACTS[2] AND PROCEDURAL BACKGROUND

Father is the presumed father of 13-year-old D. and 12-year-old twins David and Daniel. When this case began, father and mother were separated and in the midst of a divorce.

On July 19, 2012, the Los Angeles County Department of Children and Family Services (the Department) received a referral alleging general neglect and physical abuse of the children. The referral reported the children visited father on Fridays and routinely returned with bruises on Saturday mornings.

When asked by a Department social worker about the alleged physical abuse, D. began to cry and reported that father had hit her with a stick on the back of her leg during her last visit. When she returned to mother's house, D. had a long bruise on the back of her leg and was unable to sit down. She also reported that father pinched her and hit her on several other occasions with an open hand on her back, arms, and buttocks. Father used the same forms of corporal punishment on her siblings, often leaving the children with bruises.

Daniel told the social worker he argued with father about not having to use the bathroom during his last visit. He said father grabbed him by the neck, turned him around, and hit him in the eye. Earlier that day, he argued with father over getting out of the pool without a towel. Father pinched Daniel's leg, leaving a bruise. Daniel described another incident when father used a guitar to hit David. Like D., Daniel reported that father hit and pinched him numerous times on his back, arms, and buttocks as a form of discipline. He also said he had nightmares stemming from domestic violence he witnessed between his parents.[3]

---

[2] Because resolution of this appeal turns upon the existence of substantial evidence supporting the juvenile court's exercise of discretion with respect to the challenged orders, we state the facts in the light most favorable to the court's determinations. (See *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300 (*Bridget A.*); *In re Stephanie M.* (1994) 7 Cal.4th 295, 319 (*Stephanie M.*).)

[3] Mother reported there had been a domestic violence incident in 2004. Father's criminal history report showed an arrest for spousal battery in June of that year.

David corroborated the reports about father pinching Daniel and grabbing Daniel's neck before striking him in the face. He said father last pinched and hit him two visits ago, but, like the other children, David reported father regularly pinched and hit him with an open hand. He also said father regularly pulled his ears.

All three children talked about an incident when Daniel broke his leg at father's house. Daniel wanted to go to the doctor, but father refused to take him and said he would be fine. When mother picked the children up, she noticed Daniel could not walk. She took Daniel to the emergency room and got a cast for his broken leg. On a subsequent visit, father ordered Daniel to take a shower, despite Daniel's protest that he could not get the cast wet. Father tied a plastic bag around the cast, which became soaked in the shower. Daniel got a rash and the cast had to be replaced.

The children reported another incident in which David was injured on a water slide at a cousin's house. David begged father to take him to the doctor, but father refused, claiming he did not have the money. The children's aunts and uncles encouraged father to take David to a doctor, but father could not be convinced. Eventually, David managed to sneak father's cell phone and call mother. Mother took David to the hospital where he was treated for a fracture and given crutches.

The children said they were afraid of father. D. and Daniel both reported being too fearful to attend visits with him. All three children had told father he was not allowed to hit them, but he reportedly responded that he was the father and could do whatever he wanted to them.

On July 27, 2012, the Department filed a section 300 petition alleging the children were at risk due to physical abuse and medical neglect by father. The juvenile court ordered the children detained from father and released to mother, with monitored visits for father two or three times a week for two or three hours at a time.

4

In advance of the jurisdiction and disposition hearing, the Department reported the parents' open divorce proceeding in the family court. The parents acknowledged they had not seen "eye to eye" about raising the children since their separation, and both saw the need for court intervention to set a visitation plan. The children continued to report fear and apprehension about visits with father.

On September 19, 2012, mother, father and counsel for the children reached a mediated agreement. The parents submitted to jurisdiction on the allegations concerning inappropriate physical discipline and father's failure to obtain necessary medical attention for the twins. The parties also settled as to disposition, agreeing the children would remain with mother and father would receive family reunification services and monitored visits two to three times per week. Mother was ordered to complete a parenting class, the children were to participate in individual counseling and father was ordered to complete parenting and anger management programs. Father and the children also were to participate in conjoint counseling when recommended by the children's therapist.

In advance of the six-month status review hearing, the Department submitted a report recommending the court terminate jurisdiction, as the children were safe in mother's custody. Mother had completed her parenting class and father had completed his parenting and anger management programs. Mother had enrolled the children in therapy, but they were waiting for a therapist to be assigned. The Department anticipated conjoint counseling with father would begin shortly thereafter.

Father's visits with the children had generally gone well, though there had been tension over mother bringing her boyfriend to some visits. Mother agreed not to bring her boyfriend, but added she did not want father harassing or arguing with her during the visits. Father said he wanted unmonitored visitation and was tired of mother getting everything she wanted. The children said they were not ready to have unmonitored visits with father.

On March 20, 2013, the juvenile court held the six-month review hearing. Mother's counsel agreed with the Department's recommendation to terminate jurisdiction. Father's counsel objected to the recommendation, stating termination would be premature without conjoint counseling between father and the children. The court set the matter for a contested review hearing and ordered the Department to ensure the children began individual counseling as soon as possible so conjoint counseling with father could begin.

The children began therapy on April 15, 2013. In progress letters submitted two months later, the therapist reported the children were learning to cope with the impact of father's physical abuse, but they still exhibit significant anxiety leading up to and after visits with father. D. reported she had headaches and stomach aches before each visit. David and Daniel each said they had nightmares about father, and they were particularly concerned about father hurting mother. Due to the nature of the children's anxiety, the therapist concluded conjoint therapy with father would not be appropriate at the time.

Meanwhile, acrimony between the parents over father's visitation continued to build. Mother had cancelled several visits, citing reasons including the children not wanting to see father and father being inconsistent and failing to give proper notice that he wanted to visit. The Department suggested the parents obtain a neutral monitor to supervise father's visits. Father said he could not afford to pay for a monitor, but he might be willing to split the cost with mother. On June 18, 2013, the juvenile court continued the review hearing and ordered the parents to provide information on possible monitors to replace mother.

Father proposed four relatives as potential monitors. Two cleared the criminal background checks, but failed to contact the Department to discuss the visitation guidelines. Mother suggested a non-relative monitor who was later approved by the Department. The Department also identified a professional monitor that would charge $45 per hour to monitor the visits.

In advance of the contested review hearing, the Department submitted a report updating the children's progress in counseling. The report recounted a recent incident in

which father went to mother's home with the police to visit the children. D. and Daniel both said they became afraid when they learned father was outside with the police. The children's therapist also reported that the incident had caused the children to regress in their feelings toward father. Though father had complied with the case plan, the Department determined conjoint counseling and unmonitored visits currently were not appropriate due to the children's fear and anxiety over seeing father.

On November 5, 2013, the juvenile court held the contested section 364 review hearing. The Department reaffirmed its recommendation to terminate dependency jurisdiction with the children placed in mother's home, to grant joint legal custody to the parents with sole physical custody to mother, and to grant father monitored visits with unmonitored visits to follow at the therapist's discretion once father and the children participated in conjoint counseling. The children's counsel agreed with the recommendation to terminate jurisdiction, but argued mother should be granted sole physical and legal custody. With respect to legal custody, the children's counsel argued the parents had been unable to agree on who would monitor father's visits and this demonstrated they would be unable to agree on other vital issues impacting the children's well-being. Mother's counsel also requested sole physical and legal custody for mother. Father's counsel objected to terminating jurisdiction before conjoint counseling began. In the event jurisdiction were terminated, father's counsel argued he should have joint legal custody.

The juvenile court found the conditions justifying the assumption of jurisdiction no longer existed, and thus ordered jurisdiction terminated. The court granted mother sole legal and physical custody, agreeing with the children's counsel that joint legal custody would interfere with mother's ability to care for the children in view of the parents' inability to agree on basic issues concerning visitation. The court ordered monitored visits for father a minimum of two times a week for at least two hours per visit. The court ordered mother to select the monitor and split the cost with father if a paid monitor is used. The court also expressly ordered mother to ensure a monitor would be available for the minimum weekly visits. Once the children's therapy progressed to

7

the point they could participate in conjoint therapy with father, the court stated father could petition the family court for unmonitored visits.

## DISCUSSION

1. *The Juvenile Court Properly Exercised Its Discretion to Terminate Jurisdiction*

After a juvenile court determines dependent children may safely remain in the custody of a parent, the court holds periodic review hearings pursuant to section 364 to "determine whether continued supervision is necessary." Under section 364, subdivision (c), the juvenile court is required to "terminate its jurisdiction unless [the Department] establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." We review an order terminating dependency jurisdiction under section 364 for an abuse of discretion. (See *Bridget A., supra,* 148 Cal.App.4th at p. 300.)

In this case, the juvenile court assumed jurisdiction based on father's reported physical abuse of the children and his failure to obtain proper medical treatment for the twin boys. At the time of the final review hearing, the evidence showed the children had been safely maintained in mother's custody for over 15 months since their detention, father had completed parenting and anger management programs, and any potential threat of further abuse by father was controlled by the monitored visitation order. The record amply supports the court's finding that the conditions justifying the initial assumption of jurisdiction had been ameliorated and were unlikely to return. The court was correct to follow section 364's mandate and terminate jurisdiction.

8

Father does not dispute that the threat of physical harm to the children had been eliminated. Nevertheless, because conjoint counseling with the children had not commenced, father contends "[t]he court exceeded its discretion" by terminating jurisdiction when it was "apparent that the children's relationship with their father could be expected to deteriorate rather than be preserved and strengthened." We disagree.

Setting aside legitimate factual disputes over the potential trajectory of father's relationship with his children, father's contention forgets section 364's fundamental mandate. When the juvenile court has placed children with one parent and conducts a review hearing under section 364, "the court is not concerned with reunification, but in determining 'whether the dependency should be terminated or whether further supervision is necessary.' " (*In re Pedro Z.* (2010) 190 Cal.App.4th 12, 20.) This is because the "goal of dependency proceedings" is "to reunify a child with at least one parent." (*Ibid.*) Here, that goal was met by ordering the children to remain in mother's custody after she had completed a parenting class and demonstrated, for over 15 months, that she could safely take care of the children. While the court's exit order acknowledged the importance of further therapy and, ultimately, conjoint counseling to improve the children's relationship with father, that laudable aspiration was not a sufficient ground for retaining jurisdiction when the threat of physical harm had been ameliorated.

Largely for this reason, father's reliance on *Bridget A., supra,* 148 Cal.App.4th 285 is misplaced. In that case, the juvenile court terminated jurisdiction because it erroneously believed it had no authority to order the children returned to mother's home without doing so. (*Id.* at p. 313.) The appellate court reversed the termination order, finding the juvenile court failed to exercise its discretion to provide family maintenance services, where appropriate, to ensure a child remains safe when returned to parental custody. (*Id.* at p. 316.) In contrast to the instant case, the *Bridget A.* court observed that the mother had made progress, but had yet to complete a domestic violence program, and the children made "powerful arguments as to why, although a home-of-parent order was appropriate, continued court supervision [was] necessary for their protection and to

9

ensure the conditions leading to dependency jurisdiction [were] not likely to recur." (*Id.* at pp. 298, 316.)

The record amply supports the juvenile court's finding that the physical abuse and medical neglect issues that initially justified jurisdiction had been eliminated. We find no abuse of discretion in the court terminating jurisdiction.

2.  *The Juvenile Court Properly Exercised Its Discretion to Grant Mother Sole Legal Custody*

Pursuant to section 362.4, when the juvenile court terminates jurisdiction over a minor who has been adjudged a dependent, and proceedings for dissolution of marriage are pending in the superior court, the juvenile court, on its own motion, may issue an order determining the legal custody of the minor child. (See also *In re Chantal S.* (1996) 13 Cal.4th 196, 206 (*Chantal S.*).) A custody order under section 362.4 is commonly referred to as an "exit order." (See, e.g., *In re John W.* (1996) 41 Cal.App.4th 961, 970.)

Custody determinations in an exit order are committed to the sound discretion of the juvenile court. (*Stephanie M., supra,* 7 Cal.4th at p. 318.) " '[T]he juvenile court, which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child . . . .' " (*Chantal S., supra,* 13 Cal.4th at p. 206.) "[W]hen a court has made a custody determination in a dependency proceeding, ' "a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' " (*Stephanie M.,* at p. 318.)

" 'Sole legal custody' means that one parent shall have the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (Fam. Code, § 3006.) " 'Joint legal custody' " means that both parents share the right and responsibility to make these decisions. (Fam. Code, § 3003.) To be workable, joint legal custody requires the parents' willingness to cooperate in making medical, educational, and psychological decisions. (See *In re Marriage of McLoren* (1988) 202 Cal.App.3d 108, 115-116 [observing, in most circumstances, children's best interests

10

are served by joint legal custody, but where there is acrimony "the reality of their parents' conflicts unavoidably hampers the realization of that goal"].)

In this case, the parents readily acknowledged that they "have not seen eye to eye as far as raising the children" since their separation. In regard to medical decisions specifically, the record shows stark contrast between the parents' perceptions of when to seek medical treatment for the children. Moreover, as the juvenile court noted, the parents' acrimonious relationship prevented them from reaching basic agreements concerning father's monitored visits. In view of the parents' inability to compromise on visitation, coupled with their disagreement over the more serious medical decisions, we cannot say the juvenile court acted arbitrarily in granting sole legal custody to mother.

Though father acknowledges he and mother did not agree about when treatment was necessary, he suggests this is insignificant since he "never attempted to prevent mother from obtaining medical care for the children." This argument ignores the fact that father refused to consult with mother when the children were injured in his custody, and mother was forced to obtain medical treatment for the children over father's express objection and his unwillingness to pay for the treatment. In any event, this is a matter committed to the juvenile court's discretion, and father's contention does not overcome the court's legitimate concern that "granting joint legal [custody] would potentially interfere with the mother's ability to engage in other basic needs for the children." We find no abuse of discretion.

3. *The Juvenile Court Properly Exercised Its Discretion to Determine Visitation Upon Termination of Jurisdiction*

As with custody, section 362.4 authorizes the juvenile court to enter a visitation order upon termination of dependency jurisdiction. We review visitation orders under the deferential abuse of discretion standard. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32; *Bridget A., supra,* 148 Cal.App.4th at pp. 300-301.)

11

Relying principally on *In re S.H.* (2003) 111 Cal.App.4th 310 (*S.H.*), father contends the juvenile court erred by delegating control over visitation entirely to mother. We disagree. In *S.H.*, the juvenile court entered an order granting the mother monitored visits, but with the proviso that the children " 'shall not be forced to have a visit' " if they refuse. (*Id.* at p. 316.) Insofar as the order did not specify the duration or frequency of the visits that were to take place, the Court of Appeal held it improperly delegated the power to order visits to the children. The *S.H.* court explained: "[B]y failing to mandate any minimum number of monitored visits per month or even to order that *some* visitation *must* occur each month, the court's abstract recognition of [the mother's] right to visitation is illusory, transforming the children's ability to refuse 'a visit' into the practical ability to forestall any visits at all." (*Id.* at p. 319.)

Unlike the order in *S.H.*, the juvenile court's exit order in this case specifies the minimum duration and frequency of father's weekly visits, and expressly requires mother to ensure a monitor is available for each visit. Though the order provides that mother will select the monitor, this authority cannot be used to effectively deny father visitation. And, because the order specifies a minimum number and duration of visits, if a dispute arises, the family court will have a clear order to enforce. (Cf. *In re T.H.* (2010) 190 Cal.App.4th 1119, 1123 [by providing that supervised visitation would occur "only upon the 'agreement of the parents,' " exit order improperly allowed mother to deny visitation "without violating the letter of the court's order"].) Father's right to visitation is protected and not illusory. We find no abuse of discretion.

12

**DISPOSITION**

The orders terminating jurisdiction and determining custody and visitation are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, Acting P. J.

We concur:

ALDRICH, J.

KUSSMAN, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13