Filed 5/16/16  In re Carlos D. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re CARLOS D., a Person Coming Under the Juvenile Court Law. | B266474 |
| | (Los Angeles County Super. Ct. No. CK90770) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. A.C., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Julie F. Blackshaw, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

_____

A.C. (Mother) appeals from the juvenile court's order terminating jurisdiction over her three children and awarding full legal custody to Carlos D., Sr. (Father) and joint physical custody to Mother and Father. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2012 Mother and Father's three children, Carlos D., Alexa D. and Samantha D., were declared dependents of the juvenile court arising from Father's physical abuse of Samantha. The children remained in Mother's care under a family maintenance plan while Father received enhancement services. In April 2013 jurisdiction was terminated. Mother and Father were granted joint legal and physical custody of the children with the primary residence at Mother's home.

In August 2013 the Los Angeles County Department of Children and Family Services (Department) initiated new dependency proceedings on behalf of the children (then 10 years old, eight years old and three years old) pursuant to Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm), (b) (failure to protect) and (j) (abuse of sibling).[1] The petition alleged Mother had hit Carlos with a belt and her hands as well as pulled his hair. The petition further alleged Mother had yelled at Carlos and called him demeaning names, placing him at substantial risk of suffering serious emotional damage pursuant to section 300, subdivision (c). The subdivision (c) count also alleged that Mother and Father emotionally abused Carlos by frequently engaging in verbal altercations in his presence.[2]

Mother admitted to the social worker she had hit Carlos with her hand and a belt, but explained it was to punish him for stealing money and breaking a window with a BB gun. She also admitted she had called Carlos a "fat-ass" out of frustration, but regretted doing so. At the detention hearing on August 9, 2013 the court declared Father the presumed father of Carlos, Alexa and Samantha, found a prima facie showing had

---

[1]    Statutory references are to this code unless otherwise indicated.

[2]    The petition was also filed on behalf of the children's 14-year-old half sibling J.S., who is not a party to this appeal.

2

been made the children came within section 300 and ordered the children released to Father. Mother was permitted monitored visits.

At the combined jurisdiction and disposition hearing on September 27, 2013 the court sustained the section 300, subdivisions (a) and (j), allegations, finding true Mother had physically abused Carlos, but dismissed the physical abuse allegation under subdivision (b) and the emotional abuse allegation under subdivision (c). The children were placed with Father with a home-of-parent order under a court-supervised family maintenance plan. The court ordered Mother to receive family reunification services and monitored visits.[3]

In a report for the six-month review hearing the Department stated, "A constant theme for this family has been mother and father's inability to 'see eye to eye.'" Father described Mother as "very difficult to get along with," and Mother would report to the Department that Father drank too much and Samantha engaged in inappropriate behavior suggesting sexual abuse, allegations the children and Father denied. Notwithstanding this conflict, Father asked that Mother be permitted unmonitored overnight visits to relieve him of constant childcare. At the review hearing on March 12, 2014 the court ordered family maintenance services for both parents and granted Mother unmonitored visits with discretion to the Department to permit overnight visits.

As described in a report for the September 8, 2014 review hearing, Father expressed concern during the beginning of the period that Mother had been traumatizing Alexa and Samantha by constantly taking them to doctors and reporting child abuse by Father and inappropriate conduct by one of Samantha's teachers. Although the Department was in the process of filing a section 388 petition to change Mother's visits to monitored, in late July Father reported Mother had made a dramatic change and they were able to effectively communicate. In August 2014 the Department permitted overnight visits. At the review hearing on September 8, 2014 the court ordered Mother and Father to continue to participate in all previously ordered services.

---

3       J.S. was returned to Mother with a home-of-parent order.

3

In a report for the March 9, 2015 status review hearing, the Department recommended, as it had in connection with the September 8, 2014 review hearing, the court terminate jurisdiction with a family law order giving sole legal custody to Father and joint physical custody to Mother and Father. The Department explained, "It is evident both parents love their children very much. However, it is also evident that parents do not have an amicable relationship with one another. . . . [Department social worker] has spoken with each parent about setting aside any ongoing resentment issues due to [this] 'previous' history. [Department social worker] has asked parents to focus and learn to communicate their wants and needs in a healthy and positive manner for the children's well being." At the hearing on March 9, 2015 Mother requested a contest on the issue of legal custody. A hearing was set for May 28, 2015.

The May 28, 2015 hearing was continued until June 10, 2015 due to court congestion. Although Mother had attended all prior hearings, she was not present for the June 10, 2015 hearing. Her attorney argued Mother wanted to be involved in all aspects of the children's lives and "[t]he fact that the parents may have difficulties communicating is not an issue that . . . should prohibit the mother from being involved in legal decisions." In response to the court's question how the parents, as a practical matter, would be able to do that given their history, counsel suggested another family member could "mak[e] the final call" if they could not agree. Father responded he did believe any of his family members would want to "deal" with Mother. In response to the court's question whether Father was making decisions about the children's education with Mother or by himself, Father said Mother had been uncooperative providing him with birth certificates and other materials required to enroll them in school when he initially obtained custody and had made things difficult, so Father ended up doing it without her assistance.

Counsel for the children asserted Carlos and Alexa, to the extent they could understand, wanted Father to have sole legal custody, and contended Mother did not demonstrate she was responsible when it came to simple things like dropping the children off or picking them up and had not been "a presence in their school in terms of

4

participating." In supporting the Department's recommendation legal custody remain with Father, who had been making the "important decisions regarding the children," counsel argued, "When an important decision does need to be made, you do need a parent that has shown responsibility and is going to be active in making that decision."

The court awarded Father sole legal custody of the children, basing the decision on the fact Mother, in addition to not participating, "has apparently even been an impediment and unhelpful as to some of these aspects." After additional argument, the court stated, "Another reason that I'm making the decision . . . on sole legal custody, the mother isn't even here today." The court further ordered Mother and Father have joint physical custody with the primary residence at Father's home.

## DISCUSSION

Section 362.4 authorizes the court to issue a custody and visitation order when it terminates dependency jurisdiction. "When making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.) We review a custody (or "exit") order for abuse of discretion. "[R]eversal is warranted only if there is no reasonable basis upon which the trial court could conclude that its decision advanced the best interests of the child." (*In re Marriage of Melville* (2004) 122 Cal.App.4th 601, 610; see *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300-301 [we "may not disturb the order unless the court ""'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]'""'"].)

"'Sole legal custody' means that one parent shall have the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (Fam. Code, § 3006.) "'Joint legal custody' means that both parents shall share the right and the responsibility to make" those decisions. (Fam. Code, § 3003.) To be workable, joint legal custody requires the parents' willingness to cooperate in making medical, educational, and psychological decisions. (See *In re Marriage of McLoren* (1988) 202 Cal.App.3d 108, 115-116 [in most circumstances, children's best interests are

5

served by joint legal custody, but where there is acrimony "the reality of their parents' conflicts unavoidably hampers the realization of that goal"].)

Mother argues the juvenile court abused its discretion in awarding Father sole legal custody because, although the case may have started out a "high-conflict case," by June 2015 there had been no incidents of conflict for at least a year and Father's most significant complaint was that Mother would drop the children off late. Mother also contends her absence from the contested hearing was not a basis to deny her legal custody because she had appeared at every other hearing and there was no evidence in the record she had been notified the May 28, 2015 hearing had been continued until June 10, 2015.

To be sure, Mother and Father's relationship had improved, and Mother was making progress with her case plan. However, as of the date of the March 9, 2015 status review report, the Department had not yet received a parenting education progress report or certificate of completion from Mother; and she had only begun individual therapy in November 2014 as recommended by the Department. (Mother had been receiving counseling from her church pastor.) Additionally, although the conflict between Mother and Father had abated, by no means had they demonstrated the kind of cooperative relationship necessary for joint legal custody. According to the Department's submission for the March 9, 2015 status review hearing, Father reported he did not have an amicable relationship with Mother. Mother complained Father had raised his voice at her on several occasions, and she had concerns about his temper.

Conflict between the parents is not the only criterion by which legal custody is determined; the best interest of the children is a much broader standard. In that respect, both Alexa and Carlos reported Mother was not a responsible parent. For example, Alexa, who indicated she had a good relationship with Mother and enjoyed spending weekends with her, stated there were times when the children were late to school because Mother would not wake up on time. She told the Department she "need[ed] consistency in her life." The record amply supports the implied finding Father was providing that kind of consistency for the children and they were thriving.

6

Finally, the court's observation that Mother's absence from the hearing lent some additional support to its conclusion she had failed to demonstrate sufficient responsibility to warrant shared legal custody was not arbitrary or irrational. Although Mother argues there is no evidence she received notice of the continued hearing, the May 28, 2015 submitted case form indicating the hearing had been changed was signed by Mother's attorney. Additionally, although Mother may have attended every other hearing, this by far was the most significant one; and there was no suggestion from her attorney that an emergency, illness, conflict with work or other legitimate excuse existed that would justify her absence. Although we commend Mother for the progress she has made, the juvenile court's finding it was in the best interest of the children to award Father sole legal custody at this juncture was well within its discretion. If there is a significant change in circumstances and it is in the children's best interest, Mother may obtain a modification of the custody order in family law proceedings. (§§ 302, subd. (d), 362.4.)

**DISPOSITION**

The order is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


BLUMENFELD, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.