Filed 10/14/20  In re Hafsa L. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re HAFSA L., et al., Persons Coming Under the Juvenile Court Law. | B304719 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Petitioner,<br><br>v.<br><br>FAISAL L.,<br><br>Objector and Appellant;<br><br>AIDA L.,<br><br>Respondent. | (Los Angeles County Super. Ct. No. 18CCJP03991A-B) |

APPEAL from an order of the Superior Court of Los Angeles County.  Annabelle G. Cortez, Judge.  Affirmed.

John L. Dodd & Associates and John L. Dodd, under appointment by the Court of Appeal, for Objector and Appellant.

Shaylah Padgett-Weibel, under appointment by the Court of Appeal, for Respondent.

No appearance for Petitioner.

_____

Faisal L. (father) appeals from an order terminating jurisdiction over his two children, Hafsa (born Aug. 2015) and Aida (born Feb. 2018) with a custody order granting Aida M. (mother) sole legal and physical custody of the children. Father argues that the juvenile court abused its discretion in awarding mother sole legal custody. He requests that the portion of the order awarding mother sole legal custody be modified to an order of joint legal custody. We find that the evidence supported the juvenile court's order, and no abuse of discretion occurred. Therefore, we affirm the order.

## COMBINED FACTUAL AND PROCEDURAL BACKGROUND

### Family background and history of this matter

Father and mother married approximately six years ago. They are the parents of Hafsa and Aida. Mother has an older child, Ivo, from a prior relationship.[1]

The family's first incident involving the children's welfare occurred in March 2018, when it was reported that mother engaged in violent acts with father. The parents received therapy and counseling and the matter was closed as inconclusive.

The incident that instigated this proceeding occurred on May 1, 2018. Mother called law enforcement claiming that father hit her as they argued about divorce. The Los Angeles County

_____

[1] Ivo is not a subject of this appeal.

2

Department of Children and Family Services (DCFS) filed a petition on behalf of the children on June 25, 2018, alleging that mother and father had a history of domestic violence and the children were at substantial risk of harm under Welfare & Institutions Code section 300, subdivisions (a) and (b).[2]  On June 26, 2018, the juvenile court took jurisdiction over the children, but the children remained released to the parents with services in place.

On May 7, 2019, DCFS filed a supplemental petition pursuant to section 387 following allegations of another incident of violence between the parents.  Mother moved into a domestic violence shelter with the children.  Mother later obtained a restraining order on behalf of herself and the children against father.

After the adjudication of the section 387 petition on July 16, 2019, the juvenile court permitted the children to remain in mother's custody but detained them from father.  Mother was granted family maintenance services and father was permitted monitored visitation with family enhancement services.  Father appealed from the jurisdictional and dispositional orders of July 16, 2019.  In a prior nonpublished opinion, this court affirmed the juvenile court's orders in full.[3]

**Events following the previous appeal**

DCFS tried to provide father with a visitation schedule that accommodated father's work schedule.  Visits were arranged once

_____

[2]     All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3]     *In re Hafsa L.* (Jan. 29, 2020, B299321) [nonpub. opn.].

a week at the Wateridge DCFS office, and father was offered additional visits at the West San Fernando Valley office. However, father declined the additional visits, insisting that DCFS was required to bring the children to him and that DCFS was failing to follow the order for visitation given by the court.

Father attended four visits in October 2019. In November 2019, father canceled two visits, attended one visit, and one visit was canceled due to father's inappropriate behavior. During a November 2019 visit, father became aggressive and verbally abusive toward the visitation monitor in the presence of the children. Security was required to escort father from the building. December visitation was suspended pending a meeting with father to discuss his inappropriate behavior. However, father refused visits with a social worker to review the visitation concerns. During a conversation, father accused DCFS of discrimination against him due to his Muslim religion. He called the staff "good for nothing pieces of shit" and threatened lawsuits against DCFS. On December 9, 2019, the social worker again contacted father to attempt to discuss the issue of visitation, but father responded with profanity and the social worker ended the call.

During the review period father largely failed to comply with his court-ordered services. However, he did provide DCFS with the contact information for his individual counselor. DCFS noted several concerns about father's behavior, including using abusive language to the visitation monitors during visits, discussing case matters in front of the children during visits, and using visitation time to conduct business. Father also violated the restraining order by attempting to contact mother using Ivo's phone.

4

A last-minute information for the court was filed on January 14, 2020, reporting that efforts to contact and meet with father had been unsuccessful. Father was noncompliant with the services ordered for domestic violence, anger management, and parenting. However, father's individual therapist reported that he began counseling on September 18, 2019, and had participated in nine sessions. Father had made some progress in understanding the need to control his behavior.

DCFS recommended termination of dependency jurisdiction with joint legal custody to both parents and sole physical custody of the children to mother. DCFS recommended monitored visitation for father.

On January 14, 2020, the juvenile court held a section 364 hearing.[4] Father and mother were both present with counsel. Father submitted three exhibits: (1) a document showing father's successful completion of a 52-week domestic violence course in 2015; (2) a document showing father completed 26 sessions of a 26-week parenting program in May 2019; and (3) a document showing father had enrolled in anger management in August 2019, and had completed 9 out of 26 sessions. Counsel for DCFS

_____

[4] Section 364 applies when "an order is made placing a child under the supervision of the juvenile court pursuant to Section 300 and in which the child is not removed from the physical custody of his or her parent . . . ." (§ 364, subd. (a).) Pursuant to section 364, after a hearing, the court "shall determine whether continued supervision is necessary," and "shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c).)

objected to admitting father's exhibits, noting that the domestic violence course had been completed many years before the current episode and that there was no verification of the programs father submitted for parenting and anger management. The juvenile court admitted the exhibits over DCFS's objections.

Mother's counsel argued that mother should have sole legal and sole physical custody of the children because the evidence showed that father had not made any progress or shown any insight into the reasons behind the dependency. Counsel noted that father had violated the restraining order in place during the review period.

Father testified at the hearing that mother had come to his house on multiple occasions and spent the night there. Father stated that mother brought the children over on at least five occasions over the last six months. The visits occurred in July, August, and maybe September of 2019. Father's counsel argued that joint legal custody and unmonitored visits were appropriate for father.

After consideration of the evidence in the record, the juvenile court made its findings, noting that father was noncompliant with court-ordered services for domestic violence, anger management, and parenting.[5] The domestic violence course that father completed, occurred several years before the petition in this matter was sustained. The court found that father had made no progress on the issue that led to the sustaining of the petition.

The court ordered sole legal and physical custody to mother, with visits for father a minimum of two times per week

_____

[5] The court observed that while father completed parenting classes, continued participation was recommended.

to be monitored by a monitor paid for by father and approved by mother. Visit exchanges were to take place at a police station through a neutral third party with no direct contact between mother and father. Father left the courtroom before the court finished explaining its visitation orders.

The court provided an attachment to the custody order captioned "Reasons for no or supervised visitation -- juvenile." The attachment indicated that father had not completed or made substantial progress in court-ordered programs including domestic violence for offenders, anger management, parenting, and individual counseling.

At a January 17, 2020 nonappearance hearing, the juvenile custody order was received, signed and filed, and jurisdiction was terminated.

On January 31, 2020, father filed his notice of appeal.

## DISCUSSION

### I. Legal standards

When making an initial child custody determination, a trial court has wide discretion guided by its determination of the best interest of the child. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31-32).

Juvenile court custody orders are reviewed for abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) When a court has made a custody determination in a dependency proceeding, ""'a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].'" [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

7

## II. The juvenile court did not abuse its discretion in awarding mother sole legal custody

Father argues that the juvenile court abused its discretion in failing to follow DCFS's recommendation that the parents be granted joint legal custody. He argues that no substantial evidence supported the court's decision that joint legal custody was not in the children's best interests.[6] Father admits to being uncooperative with DCFS, but asserts that there was no evidence in the record that he would be uncooperative with mother concerning decisions about the children.

The juvenile court considered father's testimony, the reports submitted by DCFS, and exhibits, including those submitted by father, in making its custody determination. This evidence showed that father was noncompliant with court-ordered services, and had not addressed the issues that led to the detention of the children. In addition, father's behavior during the review period showed that he was uncooperative and difficult to work with. He continued to exhibit an inability to control his anger or comply with court mandates. The juvenile court noted that father made no progress in dealing with his anger issues and

_____

[6] Father argues that joint legal custody is generally in the children's best interest unless parental conflict renders that unworkable. (Citing *In re Marriage of McLoren* (1988) 202 Cal.App.3d 108, 115-116.) However, father admits that the presumptions of parental fitness existing in the Family Code may not apply in a juvenile court proceeding. (*In re Chantal S.* (1996) 13 Cal.4th 196, 206 ["'*The presumption of parental fitness that underlies the custody law in the family court just does not apply to dependency cases*'"].) Instead, the juvenile court, "'which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions.'" (*Ibid*.)

showed no insight into the reasons behind the dependency proceeding. The evidence was sufficient to show that father would not have the ability to work cooperatively with mother in making decisions regarding the children.

Father complains that there was no direct evidence that the parents were unable to make joint decisions concerning the children. He argues that because of this lack of evidence, the juvenile court's decision was an abuse of discretion. However, the court was required to look at the totality of the circumstances in determining the best interests of the child. (*In re Chantal S., supra,* 13 Cal.4th at p. 206 ["'the juvenile court has a special responsibility to the child as *parens patriae* and must look at the totality of the child's circumstances'"].) The evidence amply showed aggressive and difficult behavior on the part of father. This behavior supported the court's determination that the children's best interests were better served if mother could make decisions without involving father.

Father points out that he and mother engaged in mutual contact, with mother spending the night at his house and bringing the children there several times. Mother did not rebut this evidence. However, father presents no authority suggesting that this evidence supported a finding that joint custody was in the children's best interests. Even if such evidence did support a finding of joint custody, we may not reweigh the evidence. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228 ["The judgment will be upheld if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence"].) The record contains ample evidence of father's

9

inability to behave in a cooperative manner. This evidence supported the grant of sole legal custody to mother.

A parent's failure to make progress in overcoming the problems leading to the child's removal is properly considered when making a decision regarding legal custody. (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 713.) In *Jennifer R.*, the mother appealed a juvenile court decision awarding father sole legal custody of their daughter. The *Jennifer R.* court determined that the mother's failure to address the problems leading to the child's removal, and her inconsistency and inappropriateness in visitation, among other things, amply supported the juvenile court's determination that the mother's participation in making important decisions related to the child was not in the child's best interests. (*Ibid.*) Similarly here, father's failure to address the reasons for the dependency proceeding, inappropriate actions during visits and in dealing with the social workers, and uncooperative demeanor, support the finding that his participation in making decisions for the children was not in their best interests. No abuse of discretion occurred.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
CHAVEZ

We concur:

_____, P. J.
LUI

_____, J.
ASHMANN-GERST

10